Good morning. May it please the court, my name is Dan Siegel. I'm here to present argument on behalf of the appellant, Robin Potera-Haskins. Unless the court desires otherwise, it would be my intent to spend a few minutes on the right to jury trial issue, to spend most of my time on the issue of whether the denial was prejudicial, and to essentially affirm our briefing on the free speech claim, but to emphasize that the protected speech in this case actually began in 2002, before there were any criticisms of the appellant, and had to do both with her complaints about misuse of public funds regarding the scholarship for Breonna Fields, and her complaints regarding unequal allocation of resources for women's basketball as compared with men's basketball. Let me ask you right away about that. Was that not part of her duty as head coach to protect the scholarship for the team, and protect the hours assigned to the team? Judge Noonan, I think in part one could characterize it as a duty of the coach to do that. Well, what else would you... A private citizen doesn't find hours for the team. A private citizen doesn't police the scholarship for the team. That was her job. But it was also a matter of public concern, as the Supreme Court said. Her job as head coach was to protect the team, and to protect its schedule, to protect the scholarship. I don't see how you can say anything else. Well, I would perhaps parse my response, Your Honor, to say, well, she might have particular knowledge regarding the scholarship issue and her intent to protect those scholarships, but the issue of unequal practice time, unequal facilities, is at the core of the rights and protections under Title IX, and under Title IX... At the core of her duty as head coach. Well... I mean, what kind of a head coach would accept that treatment and be silent? A head coach... And you tell me, would any head coach accept that? A head coach who did not want to be punished for her protection of the rights? A coward would not do it, but she's a public employee. She has a public duty. She exercises her public duty. Your Honor, I... She did what she should do. Your Honor, I understand your question. I would submit to you that the cases that we have cited in our briefs point out that even when an individual is acting as a public employee and that that individual speaks out on matters of public policy and public concern, that that is free speech protected under the First Amendment. You reconcile that with Garcetti? Yes, of course. Garcetti was a simple case having to do with the assignment within the district attorney's office of a particular deputy and where that person would go and try cases. The situation here has to do with whether a great public university is discriminating against its women athletes as compared with its men's athletes. And I think the Ninth Circuit cases as well as the Supreme Court cases make that distinction. I guess I don't quite understand that. If she were the janitor, I suppose that might be true. But isn't she the coach and doesn't she have a duty toward her players, the other players on the team and those who might be on the team, to make sure that everything is done fairly? Isn't that part of a coach's job? It's certainly not part of the coach's job description, Your Honor. I would agree with you as a matter of ethical principle and as a matter of what people do, but I would submit that any survey of reported Title IX cases would demonstrate that the plaintiffs who suffer and complain about retaliation tend to be the coaches because those are the persons who have both the understanding and the knowledge of the issue. We're talking about the 1983 claim, not the Title IX retaliation claim, correct? I believe I was starting out on that issue. Well, let me take you back to the Title IX claim because I have a question on that. Sure. To get a remand on your right to jury trial, it's my understanding you have to demonstrate that your client preserved a right to seek pain and suffering damages as part of her compensatory damages claim under Title IX retaliation. That's correct. Isn't it also correct that your client signed a contract that contains liquidated damages provisions and she's accepted the benefit of those provisions? She signed a contract which allowed the university to exercise its rights to buy her out. Well, the contract itself uses the term liquidated damages, does it not? It does.  Well, would you concede, as the restatement does, regardless of whether or not Montana state law defines the question, would you concede that for the breach of most contracts, pain and suffering is not a permitted element of compensatory damages? I would definitely concede that. All right. And so it's only in a rare, well, it's only in defined circumstances where you have that pain and suffering, but in any case, liquidated damages cover for breach of contract claims, don't they? Isn't that what Montana state law and general law, common law, both federal and state, would say? It would, Your Honor. And let me ask one more question. You made no argument that I could discern, and maybe you did, so don't hesitate to correct me, but I couldn't discern that you made any argument in the district court that the liquidated damages in this case were insufficient to compensate and thus the liquidated damages provision should not be given effect. You didn't make any such argument, did you? The argument was made and in fact conceded with respect to the plaintiff's common law claims under Montana law, and those claims were dismissed by stipulation precisely for the reason that you suggest, Your Honor. But we are talking here about a statutory civil rights claim for which the liquidated damages provision provided no relief, and it would nullify... Well, you didn't make that. Did you make that argument to the trial court? That issue was not raised by the defendants in the trial court. Well, if I understand the Supreme Court precedent, 5-4, though it may be, we look at cases in terms of normal contractual remedies, even when they're Title IX rehabilitation claims, right? Your Honor, if I may respectfully disagree, and I think that in fact the defendants in this case have attempted to meld two issues, which are entirely distinct. What the Supreme Court has said in these cases that are subject to the... We're talking Barnes specifically. Barnes, right? Title VI, Title IX, 504. The contract law provides an analogy, and the contract in question is not the contract between the individual and the entity, but rather the contract, the analogy to contract between the state and the federal government. And as the Court said in Barnes... All right. So if we take that, and I think that's a fair distinction, but if we take it, then the contracted issue here is the employment contract between your client and Montana State University. Is that correct? Yes. And there isn't anything inherent in the nature of an employment contract that would give rise to pain and suffering as the restatement talks about it, is there? Well, there's nothing inherent in an employment contract made in the state of Montana that would give rise to that type of damage. I'm going to ask the other side about that, but let me ask you about the questions I have for you. Okay. If, in fact, I'm a high school principal and you're a high school women's basketball coach and I enter into a contract with you to sell you my house, are you entitled to pain and suffering if I breach that contract? I can't think of an example now where I would be. All right. Now I'll give you one. What if, as the high school women's basketball coach, you allege or you ask that the women's team be given an equal opportunity to practice after school instead of before school like the men's team gets, and then I refuse to sell you my house? Are you then entitled to pain and suffering because you allege that I didn't sell you my house in retaliation for your Title IX claim? Well, first of all, I'd have to prove it. But if I did sell it. No, no. You can't. It's not a question of whether or not you've already proved it. It's a question of whether you've alleged it, and the mere allegation entitles you to a jury trial because you're entitled to pain and suffering. Have I missed out on something? One step, if I may, Your Honor. If I have made the allegation that your conduct violates Title IX and interfered with my rights to have equal treatment. Well, isn't that the allegation? Your client has made in this case? She has made the allegation, and I think this is the claim that's before this court, that her rights under Title IX were violated when she suffered retaliation because she complained not only about unequal treatment of the team but also about being treated differently than the men's basketball coach in being required to take on the daughter of the athletic director and provide her with a scholarship. But she didn't bring a Title VII claim. She isn't claiming sexual discrimination. She's claiming retaliation for Title IX, correct? She had a Title VII claim that went by the wayside. We're not concerned with that here. Okay. Mr. Siegel, let me draw your attention to some language in Barnes. Federal courts may use any available remedy to make good the wrong done. When a federal funds recipient violates conditions of spending clause legislation, the wrong done is the failure to provide what the contractual obligation requires. Yes. The contractual obligation. So it's just there's no talk of emotional. To make good, and it is made good when she gets liquidated damages. That's what the contractual obligation, the analogy at least, provides. That's the wrong done. The wrong done is to penalize someone for validating civil rights under the United States Constitution. Let's concentrate on the actual injury. If the president of the university said to your client, I don't like women, that's not actionable. If he said, I don't like women basketball coaches, that's not actionable. It's when he does an injury, and you say he did the injury of terminating you because of that. Then the wrong done is her loss of employment, and it's covered by the liquidated damage clause. Well, Your Honor, I think that the Eleventh Circuit in Sheely has the better part of that argument. I know the Eleventh Circuit, but I'll tell you, having sat with the Eleventh Circuit, I consider the Ninth Circuit a much better court to go by. I wish you would focus on that, the language of bonds, the wrong done. What is the wrong done other than termination? The wrong done is to attack a person's reputation. No, no, no. You agreed with me with my hypotheticals. If he made a casual statement that he didn't like this or that, there would be no damages. Well, that's because there is also a doctrine under discrimination law which requires that there be more than an isolated comment upon which to predicate liability. Where did you show her reputation was injured? Where did we show it? Yeah. We showed it in the evidence that was presented to the trial court regarding her efforts, unsuccessful, to obtain employment after a 16-year history of successfully completing work as a basketball coach and on each occasion being promoted, if you will, to a more responsible position at either a larger university or a university with a higher level athletic program. Now, that is the wrong that's done. In the area of coaching, it is not infrequent for an institution to buy out a coach's contract to say, well, we've decided to go in another direction. That's what they did. They didn't fire her for a cause. No, they didn't, but they fired her in a context in which she was wrongfully alleged to have engaged in misconduct vis-à-vis her student athletes. Well, go ahead. You're doing your best you can. Okay, thank you. I'm also running out of time. I wonder if I can reserve a little bit of time. We'll give you a minute. Okay, thank you. Good morning, and may it please the Court. I'm Andy Forsyth, and with me is Mike Begley. This morning I'll present our argument. I represent Montana State University in the case, and maybe I'll pick up where some of the comments left off and talk a little about the contract of employment my client had with the coach and how the Barnes v. Gorman case affects that. I think we learned from Barnes v. Gorman that when looking at remedies for a Title IX claim we should use an analogy to contract law and contract law remedies. This is a case where, and it's different, I think, from many of the cases, the district court cases cited by the plaintiffs, different in that we have a very clear contractual relationship between the defendant and the plaintiff. The contract, of course, was employment. It was a written contract, and it was for a specific term. It was she had a succession of one-year contracts, terminable early without cause, on payment of liquidated damages. And so if we look at the Gorman v. Barnes case, I think we can say here, perhaps a little different than the plaintiff in the Sheely case, the Eleventh Circuit case. Here there really was a very clear contract and clear traditional law on the damages available for breach of such a contract. And, of course, my client argued from the beginning in the case that since she accepted liquidated damages, she had received what she had agreed to receive in the event of a termination that was premature or occurred before the end of the term of the contract. If we look at Title IX and say, but what if the reason? Let me ask you, Mr. Forsythe, was there any discussion in the district court below about the extent of remedies under compensatory damages that the liquidated damages provision covered? Well, we certainly had asked the district court to find that the liquidated damages covered all her claim. Now, the court declined to do that, but the court did hold that the liquidated damage claim fully compensated for any lost wages or any claim of lost wages. So it's your view that the district court erred in making that determination? Well, I think in light of Gorman v. Barnes, it seems clear in light of that case that the district court, net of everything, I think was correct in that there is no emotional distress damage available under the circumstances of this case given this contract. But you would argue that for different reasons than the district court found? Well, I think the district court could have found and perhaps should have found, certainly we encouraged the district court to find that liquidated damages resolved all issues. I would be a little nervous about the proposition that a contract of employment can somehow avoid an obligation to conform to Title IX. I wouldn't be so bold as to suggest that. I think, however, it certainly resolved the wage loss issue, and I think we know from Barnes v. Gorman that the emotional distress issue goes away because it isn't a remedy available. Well, let me ask, if I understand it correctly, the district court declined to grant a jury trial finding that Montana state law wouldn't allow an attempt to recover pain and suffering as compensatory damages because the plaintiff had demonstrated no physical injury. Have I stated that correctly or roughly so? I think so. I think I would say that... If I've roughly stated it, my real question is this. How does Montana state law affect what a federal obligation is if there is a federal obligation here from Title IX? Well, I think the judge arrived at the correct conclusion, but if he was saying this is because it's Montana law, I don't think that really conforms to Barnes v. Gorman. Well, what should he have said, because that seems to be what he said. Yeah, he should have said that traditional contract law, which is the phrase Barnes v. Gorman uses, doesn't provide for emotional distress. And again, I think in this case we have to remember that unlike, for example, some of the plaintiffs in the district court cases addressing Barnes v. Gorman, this plaintiff had a contract of employment, a very specific kind of contract, and we have very specific law on the kind of remedy available. He could have or should have said traditional contract law. But I might add that that would be correct. It is traditional contract law that you don't get pain and suffering or emotional distress for breach of an employment contract. In fact, many U.S. state courts have held that you don't get emotional distress as a damage in a wrongful discharge case. Okay. And so the Sheely case, I would take what you say, that really doesn't have any bearing here, not only because it's an 11th Circuit case, but because there was no contract or what? Well, I think Sheely was wrong in this sense. If we look at Barnes v. Gorman, we say, what are traditional contract remedies? And then if you look at the restatement, which are the two exceptions our district judge did discuss, is there a physical injury connected with the breach of contract? No. Then no emotional distress. Then the restatement says, is it one of those rare and peculiar contracts where significant emotional distress is the expected result of the breach? And the classic example, actually, is care of the remains of a deceased person. Is Sheely that kind of agreement? In that case, you know, a blind woman with a seeing eye dog went to an MRI center with her minor child. I don't know. There are going to be cases under Barnes v. Gorman where emotional distress might be available, depending on the nature of the contract. Let me ask you this, though. Can I interrupt? No, go ahead. Didn't Sheely say that it was the nature of the discrimination that justifies and allows the party to anticipate that there would be pain and suffering? Yeah, I mean, I don't agree with the Sheely decision, and I'll tell you my biggest gripe with it is this, that when Gorman said, is it a traditional contract damage, I thought that was a rule I could understand. When Sheely says, let's look at what the expectation of the parties might be in terms of whether it could cause emotional suffering, I think they're not following traditional contract damage analysis, because when you look at the restatement, it's saying it isn't. Can you expect emotional upset? Is it the kind of contract where that's the expectation? Yeah, because I suppose every termination results in it. Well, and if you look at the restatement, I noted this. It said, and I'll just quote a comment from the restatement, Section 353, breach of other types of contracts resulting, for example, in sudden impoverishment or bankruptcy, may by chance cause severe emotional disturbance, but don't get emotional. Let me ask you a different hypothetical. Let's take a Title VII case, and let's say, to borrow from one of Judge Noonan's analogies, that the plaintiff comes in and the college president says, not only am I firing you as a basketball coach, but I'm firing you as a basketball coach because you're a woman. Does the fact that she entered into a liquidated damages provision prevent the Title VII claim in this instance? Well, this is a comment we touched on earlier. Would I tell you that a contract of employment with liquidated damages can somehow be a way for an employer to right their way around discrimination law? I would say no. I would say, no, you can't do that. I would say only here because we're under a spending clause case, where we look at contract-type damages, we would say that contract-type damages, even assuming arguendo, that there was an improper reason for ending the contract under a spending clause legislation, we would not get emotional distress damages. But, again, I'm not saying that I can write a contract with my employee that relieves me of my discrimination obligations. Okay. So let me touch a little, if I may, on harmless error, even if there was some availability. Before you move to harmless error, I've already suggested my skepticism that Montana law applies in defining the obligations under Title IX. But what law applies in determining whether liquidated damages covers pain and suffering? Do we look to Montana state law, or do we look to some sort of federal law or some sort of restatement provision, or what do we look to there? I confess that I can't find enough guidance in Barnes v. Gorman to confidently answer the question. I think Barnes would say, let's look at traditional contract law, and we know if we're just saying, okay, we have a contract, we can read it, it says liquidated damages. Montana law or not, traditional contract law would say, liquidated damages means we can't quantify the harm we've done you. We are agreeing in advance that if we do this harm, you'll accept. I just don't know what is meant by traditional contract law. That's a meaningless phrase. You look to the law. We look to the law of some jurisdiction or some field like admiralty or something. We don't just say we're looking to traditional contract law. So what does that give us for a rule? I don't understand. No, it's no rule. And it can't change, and that can't be. It's not consistent with the common law to say something like that. Say the rule gets frozen in 1850. No, I understand that, and I think it's a standard that may be challenging, but it's a standard that at least I think we can work with and look at contract law. I agree that it isn't specific Montana exceptions. There was the case, I can't recall the site now, we cited a district judge in, I think, was it Arizona or New Mexico, had looked at Barnes v. They're very different. They may be. And struggled with that issue and said, well, does traditional contract law mean if I can find an exception that the state of New Jersey has found for a contract damage, that's my rule, if I like it for this case. Well, I think that judge struggled with it and came to a conclusion that I think is reasonable, and that is there is at least a body of contract law that has some basic principles. You know, we all remember law school, here's contract law, and now we'll spend most of the semester on the exceptions to the rules. But still there's a body of rules, and I think it does provide us some guidance here. And that's the best I can do for you. So I suppose the restatement is as good a place to go as any. I think the restatement is a good place to go, and I think it gives us some guidance. It is a tricky subject in the restatement when they talk about what's the kind of contract that will get you emotional distress. And they do go to some old concepts that are getting a little dusty. But I do think that modern law does not generally, does not provide emotional distress damages for termination of employment. And that at least I think is guidance here that I think the court, looking at the facts of this case, correctly held that no emotional distress or general distress damages are available, and therefore the court was not in error in trying the case without a jury. So unless there are other questions, I might touch briefly on, might as well use my three minutes. Well, no, you don't have to use it at all. Do you want to say anything about retaliation specifically? You know, I think that the, I might mention at least on the issue of, well, I'll touch on two things very briefly. One is the harmless error issue, and that is I think if one digs into the transcript here, it's clear that the employer had a significant body of testimony evidencing independent faculty committees evaluating complaints of the young women who played on the team. And that when one looks at President Gamble's ultimate decision, certainly it is reasonable to conclude on the Section 1983 claim that he would not have perceived himself as. Isn't that a pretty fine line between asking us to be retriers of the facts? Yeah, I'm getting a little close, so let me back off a little. So let's instead let me offer a brief comment on the harmless error, which allows some analysis of the facts. And that is to suggest that there is significant evidence in the record of a nondiscriminatory reason for the decision NSU made. And that when we then look at the harmless error standard this Court has announced, where at least one must look for significant probative evidence, and here I'm quoting this Court's opinion in Lakeside v. Noma County, any inference drawn from the plaintiff's evidence must be reasonable and not speculative. But when we look at the mountain of evidence providing evidence of ongoing complaint from the young women who played for the team, and we set that against what the plaintiff offered, all she really offered was, I complained in November of 2003, and I was terminated five months later. But based on all the other facts, the inference is mere speculation when one considers that between her complaint and the termination, there was a committee of faculty who interviewed the players and unanimously recommended termination about three months later for reasons unrelated to the complaints that she had made. Her other evidence on the harmless error issue tends really to be a suggestion that some of the young women said different things at different times. But that's in itself not evidence that they didn't make the complaints, but merely that they had different versions of events or different feelings at different times. So I guess let me conclude by mentioning the Section 1983 claim of termination and retaliation for exercise of free speech. Under Garcetti, I think the rule is that when she made her comments, we must ask, was it within the course of her employment and duties as head coach? The head coach of the basketball team is in charge of the entire program. Everything that happens with the program is the head coach's job. Recruiting students, granting scholarships, throwing students off. I think we understand your position and you have now. Fair enough. So my time is up, so thank you very much for your attention. Let me try to make two points very quickly, if I may. The Court's focus on Gorman, I believe, is appropriate. I would urge the Court to look at pages 186 and 187 in the official report. The Supreme Court makes clear that the contract analogy is just that. It's an analogy. And it also says, quoting its previous decision in Franklin, is that the implication of the decision is appropriate relief. And then it goes on to say, what is the state on notice about? And I believe that the Sheely Court got it right, which is the state is on notice, that when it discriminates against an individual, emotional distress damages are an appropriate remedy. And that's where I respectfully disagree with counsel. Where he says termination of employment does not lead to emotional distress damages. That's correct unless the termination of employment violates one of our nation's civil rights laws. Okay. Now, finally, on the harmless error, very quickly. I would urge the Court to look at one document, and that's 205 in the excerpt of record, which indicates that as of December 2003, all was fine with the plaintiff. Somehow things changed in the next two months when not only Mr. Fields, but Mrs. Fields waged a campaign to convince Vice President Yarnell and President Gamble to terminate my client. Clearly, they had the animus to do that. Thank you. Thank you. The case just argued is submitted.
judges: Snow, Schroeder, Noonan